W. SHARP, J.
Dempsey appeals from two final summary judgments rendered by the trial court in favor of two sets of defendants: the law firm of Cauthen & Odham, P.A. and two attorneys of that firm, Cauthen and Keough; and individual defendants, Rudolph Hardick, Michael Hardick and Goodrich. The basis for both summary judgments was collateral estoppel — “a Partial Final Summary Judgment entered by the Honorable Edward M. Jackson in case number 96-03728-CA — which fully resolves the issue of causation and hence all issues in this case.” That case (referred to below as suit number four) involved Dempsey as the plaintiff and two individuals not involved in this suit — Barnett Bank and Duchenne. Because we think collateral estoppel cannot be used in this case to bar Dempsey’s suit against these defendants, we reverse.
After this appeal was filed, the trial court awarded attorney’s fees to appellees based on section 57.105 (frivolous lawsuit). Dempsey appealed: Our Case No. 99-1866. We consolidated these appeals for disposition. Based on our disposition of Case No. 98-3466, we reverse the attorney’s fees awarded in Case No. 99-1866.
*108 In order to set out the facts of Case No. 98-8466, it is necessary to digress through a maze of lawsuits. In the first suit (suit number one), Dempsey sued RDMH, Inc. and Rudolph Hardick in 1989, in Brevard County. He obtained a $611,080.00 judgment on May 4, 1992. No supersedeas bond was ever posted nor was a stay in that case ever obtained. The judgment was appealed and ultimately the judgment was reduced to $88,617.00 See RDMH, Inc. v. Dempsey, 618 So.2d 794 (Fla. 5th DCA 1993).
While suit number one was on appeal, Central Florida Mortgage Investment Corporation, (a company owned by Har-dick), sued Dempsey in Brevard County and got a judgment against him. In proceedings supplementary brought in Bre-vard County (suit number two), CFMI sought to levy on the judgment Dempsey had obtained in suit number one. On May 7, 1992, Judge Pound ruled as follows:
Further, Defendant Richard J. Dempsey and the third parties, RDMH and Rudolph Hardick, and their attorneys, agents and assigns, are prohibited and enjoined from compromising, settling, selling, transferring, encumbering, executing or in any other way dealing or affecting the judgment held by Richard J. Dempsey against third parties RDMH, Inc., and Rudolph Hardick, in the case entitled Richard J. Dempsey, plaintiff vs. RDMH., Inc[.] and Rudolph Hardick, Defendants in Brevard County, Florida Circuit Court Case No. 89-9103 — CA—C before these proceedings supplementary are resolved.
Technically, pursuant to Florida Rule of Civil Procedure 1.550, this was not the proper procedure to stay or supersede a final judgment rendered by another court for which no bond had been posted. One of the major difficulties with this case is that Dempsey appeared pro se, and took no appeals of the various court rulings.
In that supplemental proceeding (suit number two), another alleged judgment creditor of Dempsey (Duchenne) intervened, also seeking to levy on the judgment in suit number one. After a hearing, Judge Pound ruled on October 7, 1992 that Duchenne would not be allowed to use the judgment she had purchased from Barnett Bank, to levy and execute on Dempsey’s judgment obtained in suit number one. He followed that ruling with an order dated October 14,1992:
The judgment entered in the case of Richard J. Dempsey v. RDMH, Inc. and Rudolph Hardick, Brevard County Circuit Court Case No. 89-9103-CA-J is not subject to execution or proceedings supplementary while said judgment is under appeal.
In this order, the judge also dissolved the stay and injunction imposed by his May 1992 order.
Despite Judge Pound’s ruling in suit number two, that Dempsey should not execute on the judgment in suit number one, Dempsey commenced supplemental proceedings (suit number three) to enforce his judgment in Lake County, in May of 1992. In September of 1992, Dempsey filed instructions to levy on property owned by RDMH in Lake County and a sheriffs sale was set for October 21, 1992, which was allegedly canceled because of various failures to comply with the statutes and because of Judge Pound’s order. The sale was reset for December 1992, but in the interim, RDMH, Hardick and the sheriff filed a declaratory judgment suit against Dempsey to stop the sale, based on Judge Pound’s order. Dempsey alleged in this suit that Judge Pound’s order was misused to stop the sale and that the defendants in this ease made false statements in that regard. The defendant/appellees attorneys and law firm in this case represented Hardick, et al. in the Lake County litigation.
In suit number four, filed October 1996, the one relied upon by the trial court in this case as barring relitigation of issues determined against Dempsey, Dempsey sued Barnett Bank and Duchenne, in *109 Brevard County, on the ground they had hindered his collection efforts in Lake County. The Bank had assigned a 1981 judgment it held against Dempsey to Duchenne in May of 1992. Dempsey established the judgment had been satisfied and claimed that Barnett and Duchenne had 'wrongfully used it to prevent him from enforcing his judgment obtained in suit number one, and had hindered other collection efforts.
The court entered a partial final summary judgment in favor of Barnett Bank and Duchenne, in suit number four on the ground that they had nothing to do with the cancellation of the sheriffs sale in Lake County in suit number three. It found:
The sheriffs sale was canceled because of legal and procedural reasons which bore no relationship to the 1981 judgment owned by Duchenne or Barnett Bank. The sale was canceled because of failure to comply with statutory requirements and because the writ was obtained in violation of Judge Pound’s order.
With regard to the balance of this suit, Barnett settled and Duchenne filed for bankruptcy.
That brings us to this lawsuit, in October of 1996, in a separate proceeding, Dempsey sued the above-named defendants/appellees. He alleged various causes of action, the essence of which was that they fraudulently and wrongfully prevented him from executing on his judgment in Lake County and fraudulently conspired and transferred RDMH’s and Hardick’s assets to shell corporations to prevent his collection efforts. The trial court did not reach the merits of the allegations or defenses, but rather relied on the ruling of the court in suit number four as a complete bar to Dempsey’s recovery of damages arising out of the Lake County proceedings (suit number three). It said:
This issue of whether the postponement or cancellation of a sheriffs sale was caused by tortious conduct or was the source of any damage to the plaintiff was previously determined in a prior lawsuit and the result was not supportive of the plaintiffs claims.
As applied by the trial court in this case, the doctrine of collateral estoppel is being used defensively rather than affirmatively. Other jurisdictions have allowed it to bar suits brought by a party to a prior suit, against a stranger (or non-rélated party) in a current suit, where the party against whom it is being asserted has had a full and fair opportunity to litigate the same issues in the prior action. 47 Am.Jur.2d §§ 645-646; 648; 650. Offensive use of collateral estoppel is also allowed by some jurisdictions on a case-by-case basis where the court considers that the party, against whom it is being asserted, had the opportunity to fully litigate the issue, and the issue is identical to the one in the second case. 47 Am.Jur. Collateral Estoppel § 647.
However, Florida has considered and rejected the application of collateral estoppel defensively, as well as offensively, unless the parties involved in both suits are the same (or their privies, etc.).[1] The latest word on this issue was rendered in E.C. v. Katz, 731 So.2d 1268 (Fla.1999). In a prior dissolution case, the mother of a child had alleged and claimed that the father had sexually abused their child. The dissolution court ruled no sexual abuse by the father had occurred. In the second suit, the mother sued the treating physician for medical malpractice for failing to diagnose sexual abuse. The physician defended on the basis of collateral estoppel and the trial court granted summary judgment on that ground. The fourth district affirmed.
*110 The Florida Supreme Court reversed, saying that Florida has traditionally required mutuality of parties in order for the doctrine of collateral estoppel to apply. It said the sole exception to the rule was articulated in Zeidwig v. Ward, 548 So.2d 209 (Fla.1989). In that case, a criminal defendant unsuccessfully brought an ineffective assistance of counsel claim in a post-conviction proceeding, and lost. He was thereafter barred by collateral estop-pel from suing his former lawyer in a malpractice suit. The court cautioned that collateral estoppel used defensively against a party by a stranger to the first suit, should only be allowed under compelling facts of the case and should be limited to ineffective assistance of counsel claims and subsequent legal, malpractice claims.
Appellees point to West v. Kawasaki Motors Manufacturing Corp., 595 So.2d 92 (Fla. 3d DCA 1992) as providing a precedent for the application of defensive collateral estoppel in this case. West was a products liability case involving an alleged defective design of a motorcycle. In the first suit the plaintiff sued the wholesaler on strict liability grounds, and the jury verdict determined that there was no defective design. In the second suit, plaintiff sued the manufacturer and retailer on the same strict liability grounds. The appellate court ruled that collateral estoppel could be allowed to bar the second suit, citing to Zeidwig. The court said the application of collateral estoppel defensively in Florida should turn on whether the suits involve the same claims and underlying facts, whether the second defendant has a factual relationship to the first defendant (so that it is equitable to the plaintiff to give the second defendant the benefit of the first defendant’s victory), whether the first defendant was closely related to the second (ie., right of indemnification), and finally, whether the plaintiff had a fair opportunity, procedurally and substantively, to pursue his claim.
We are not sure and we frankly doubt that West survives the Katz decision. But we do not need to reach that issue. In suit number four the issue was whether or not those defendants (Barnett Bank and Duchenne) caused Dempsey’s damages in the Lake County proceedings. That was decided adversely to Dempsey. But the court’s additional findings concerning the reasons why the sale was canceled were not necessary to the decision in that case and the interaction or possible causation of Dempsey’s alleged loss by the defendants in this case was not at issue or litigated. Thus, even under the defensive collateral estoppel rules applicable in many other jurisdictions, collateral estoppel would not bar Dempsey’s present suit. Restatement of Torts (Second) Judgments §§ 27, 727, 437; AmJur.2d Collateral Estoppel §§ 531, 539, 549, 648. Clearly it does not bar this lawsuit in Florida.
REVERSED and REMANDED.
DAUKSCH and COBB, JJ„ concur.

. See O’Brien v. Federal Trust Bank F.S.B., 727 So.2d 296 (Fla. 5th DCA 1999); Stogniew v. McQueen, 656 So.2d 917 (Fla.1995).